UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In the Matter of:

MATTHEW G. STRICKFADEN,

        Debtor,

_____/

District Ct. No. 09-CV-15060
Hon. GEORGE CARAM STEEH

Bankruptcy No. 07-58885-swr
Chapter 7
Adv. Case No. 07-06788-swr

R. BART SANGAL AND JOANNE SANGAL,

        Plaintiffs/Appellants,

v.

MATTHEW G. STRICKFADEN,

        Defendant/Appellee.

_____/

## ORDER AFFIRMING BANKRUPTCY COURT'S DECISION

        Plaintiffs-Appellants R. Bart Sangal and JoAnne Sangal (the "Sangals") filed an adversary proceeding against Defendant-Appellee Matthew G. Strickfaden ("Strickfaden"), a Chapter 7 petitioner, seeking a determination that debts owed to them by Strickfaden are not dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(4), and (a)(6).  The Sangals asserted Strickfaden committed various breaches of the Michigan Builders Trust Fund Act and other frauds.  On March 31, 2009, April 16, 2009, July 14, 2009, and July 16, 2009, the Bankruptcy Court held a trial.  The Bankruptcy Court heard testimony from Strickfaden, Dr. Bart Sangal, and another witness.  At the conclusion of the trial, the Bankruptcy Court took the matter under advisement.  The Bankruptcy Court ordered a transcript of the trial, which was filed on September 14, 2009.  On December

18, 2009, the Bankruptcy Court issued a fifteen-page Opinion finding for Strickfaden on all counts of the complaint and dismissing the complaint. The Sangals filed an appeal of certain portions of the Opinion relating to their § 523(a)(4) claims. The appeal is fully briefed. Oral argument occurred on August 30, 2010. For the reasons stated below, the Court AFFIRMS the Bankruptcy Court's Opinion finding for Defendant Strickfaden.

## STATEMENT OF FACTS

On April 29, 2002, the Sangals and Matthew G. Strickfaden & Associates ("MGS") entered into a contract in which MGS (a company owned solely by Strickfaden) was hired as general contractor and project manager for the construction of a new house for the Sangals. MGS was to use subcontractors in the construction of the house, with limited use of its own laborers. The fee for the project was $160,000, paid out over the course of the project. The contract contained three categories of expenses. The first category is the "guaranteed not to exceed" category in which Strickfaden, on behalf of MGS, would guarantee that certain portions of the project would not exceed guaranteed amounts. If Strickfaden did not spend the entire amount, the excess could be used on other "guaranteed not to exceed" portions of the project. The next category contains those expenses for which Strickfaden would provide a good faith estimate, and excesses would be dealt with on a case-by-case basis. The third category contains items specifically selected and paid for by the Sangals.

Throughout the parties' relationship, they did not get along. Strickfaden asserts the Sangals did not provide funds in a timely manner. The Sangals claim Strickfaden used funds from their project for other projects. The parties entered into a contract addendum on November 26, 2002 providing that the accounts holding construction

2

expenses and the account holding Strickfaden's fees would be separated, and an escrow agent would be needed to remove funds. A second addendum was entered into on March 23, 2003, providing for payment from Strickfaden to the Sangals for a refund of certain expenses. A third addendum was entered into in July 2003 which provided further limitations on Strickfaden.

Strickfaden periodically submitted sworn statements to the Sangals projecting future expenditures, which sometimes noted sums would be spent within the next thirty days. Strickfaden submitted Sworn Statement #5, dated December 10, 2003, to the Sangals requesting funds for the project as estimated on the statement. The funding request was approved by the architect on December 16, 2003, and Dr. Sangal testified that he fully funded the request. The Sangals assert that certain subcontractors listed on the sworn statement were not paid with the funds provided. The Sangals assert that they later had to pay those subcontractors with additional funds. Strickfaden admits that he did not pay those particular subcontractors at the time of the sworn statement. He asserts that the subcontractors did not complete the work at that time and thus were appropriately not paid from those particular funds. Strickfaden admitted that he paid approximately $8,000 of his own project management fees from the funds received from the Sangals following approval of Sworn Statement #5.

Dr. Sangal sent letters to Strickfaden and the architect regarding cost overruns and regarding Dr. Sangal's demand that he be allowed to pre-approve charges for Strickfaden's laborers. Dr. Sangal testified that he also told Strickfaden in person that Strickfaden must obtain pre-approval for labor performed by MGS laborers as opposed to subcontractors.

The parties' relationship continued to deteriorate. In September 2004, the architect certified breaches of contract by MGS. The Sangals then terminated their contract with MGS, firing Strickfaden. The Sangals filed a lawsuit against Strickfaden and MGS in Oakland County Circuit Court. In September 2007, Strickfaden filed a Chapter 7 bankruptcy petition. The Sangals then filed an adversary proceeding seeking a determination that debts arising from violation of MCL § 570.151, the Michigan Builders Trust Fund Act, were non-dischargeable. The Bankruptcy Court held the trial on March 31, 2009, April 16, 2009, July 14, 2009, and July 16, 2009. The Bankruptcy Court issued its Opinion and Order dismissing all of the Sangals' claims on December 18, 2009. The Sangals filed a Notice of Appeal on December 28, 2009.

The Sangals appeal the Bankruptcy Court's findings relating to the diversion of certain funds requested in Sworn Statement #5 and relating to charges for MGS laborers. The Bankruptcy Court found that Strickfaden breached his fiduciary duty when he collected funds to pay certain subcontractors listed on Sworn Statement #5 and did not pay them. The Bankruptcy Court found that the burden then shifted back to the Sangals to prove a loss resulting from the breach. The Bankruptcy Court found that the Sangals failed to prove a loss. The Bankruptcy Court also found that while Strickfaden may have billed MGS labor charges without authorization, the Sangals did not offer evidence that such authorization was required by contract. The Bankruptcy Court found no breach of fiduciary duty based on Strickfaden's payment of funds to MGS laborers. The Bankruptcy Court concluded the Sangals failed to prove any non-dischargeable debt under § 523(a)(4) of the Bankruptcy Code.

4

## STANDARD OF REVIEW

When a bankruptcy court's decision is appealed to the district court, the district court applies the standards of review normally applied by a federal appellate court. In re H.J. Scheirich Co., 982 F.2d 945, 949 (6th Cir. 1993). "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. P. 8013. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573 (1985) (citation omitted). The district court reviews the bankruptcy court's legal conclusions *de novo*. Investors Credit Corp. v. Batie, 995 F.2d 85, 88 (6th Cir. 1993).

## ANALYSIS

The Sangals argue the Bankruptcy Court erred in its findings regarding Sworn Statement #5 and regarding MGS labor charges. The Sangals argue:

- The Bankruptcy Court's damage findings relating to subcontractors listed on Sworn Statement #5 are legal and factual error;

- It was error for the Bankruptcy Court to find the contract permitted Strickfaden to violate the Builders Trust Fund Act; and

- The Bankruptcy Court erred in finding the Sangals had the burden of proof on the issue of labor overcharges.

For the reasons set forth below, the Bankruptcy Court's ruling is correct.

5

I. Bankruptcy Court's Findings Regarding Sworn Statement #5

As set forth by the Bankruptcy Court, a claim for non-dischargeability pursuant to § 523(a)(4) has three requirements: (1) a fiduciary relationship; (2) a breach of fiduciary duty; and (3) a resulting loss. (Op., p. 10); *In re Patel*, 565 F.3d 963, 968 (6th Cir. 2009). As to the Sangals' defalcation claim for funds provided in connection with Sworn Statement #5, the Bankruptcy Court found the first two requirements were met. Strickfaden had a fiduciary duty to the Sangals pursuant to the Michigan Builders Trust Fund Act. He breached that duty by collecting funds for certain subcontractors as listed on Sworn Statement #5 and not paying them. The Bankruptcy Court then found the burden of proof shifted back to the Sangals to prove loss resulting from the breach. The Bankruptcy Court held that the Sangals failed to meet their burden. The Sangals challenge the Bankruptcy Court's finding regarding the third requirement.

The Sangals first assert that they were damaged whether or not they paid a second time for the charges listed on Sworn Statement #5. (App. Br., p. 23.) This argument is based on the Sangals' interpretation of *In re Little*, 163 B.R. 497 (Bankr. E.D. Mich. 1994). In the *Little* case, the court found defalcation in the full amount of the indebtedness established in state court. 163 B.R. at 504. The court found that once the plaintiff proved the existence of a fiduciary duty relating to the funds, the defendant was required to account for the trust funds (in other words, prove that defalcation did not occur). *Id.* at 500-01. The debtor was required to show that the funds were used for the intended beneficiary of the trust. *Id.* at 503.

The Sangals argue that the *Little* case is instructive here, because in that case: (a) the debtor took money in advance but did not finish the job; (b) there was no claim

6

that any subcontractors had gone unpaid; and (c) in order to prove loss, the plaintiff did not have to show that he paid again to finish the project. The Sangals correctly describe *Little*, but fail to point out the key difference between the *Little* case and this case – in *Little,* the debtor failed to provide an accounting of the funds. His failure to provide an accounting ended his defense. The court found "the mere failure to account establishes a loss." *Little*, 163 B.R. at 501. "Because the Debtor failed to account for the trust funds, judgment will enter in favor of the Plaintiff for the full amount of the indebtedness." *Id.* at 504.

The *Little* court noted that "[o]ne might expect that the Debtor would attempt to show, for example, that he simply underestimated the cost of completing the project, and that all funds received from the Plaintiff were in fact spent on the project." *Id.* at 504. The court also stated that "it is possible that all or some portion of the debt as determined by the state court may simply reflect the cost to the Plaintiff of completing the project, rather than defalcation by the Debtor," suggesting that such amount *would be dischargeable. Id.* at 504, n. 7. However, in *Little*, the debtor did not attempt to show that the funds were actually spent on the project.

Here, while Stricken admitted to paying his own project management fees in violation of his fiduciary duty, he provided an accounting of the funds showing the funds were actually spent on construction of the Sangals' home. The Bankruptcy Court noted that Strickfaden showed that "he spent $79,548 on the project shortly after receipt of the $71,261.19 from the Sangals," which included an approximately $8,000 payment to himself for earned project management fees. (Op., p. 6, n.7.) The Bankruptcy Court further noted that Strickfaden received an additional $75,000 from the Sangals and that

7

his records show that the money was used on the project. *Id.* Thus, as the Bankruptcy Court found, after the court finds a "technical breach, then the plaintiff must demonstrate a loss resulting from the breach." (Op., p. 10, *citing Little*, 163 B.R. at 503-04 (noting that there would be no defalcation if the funds were spent completing the project) and *Michigan v. Looze*, Case No. 234195, 2002 WL 31421764 at *2 (Mich. App. Oct. 25, 2002) ("the proof in this case lies in the accounting and whether the prosecution could prove that not all of the $70,000 went toward contract-related bills").) Contrary to the Sangals' assertions, the *Little* case does not dictate otherwise.

The Bankruptcy Court also concluded, based on its consideration of the evidence, that the Sangals had not proven a loss resulting from Strickfaden's breach. Dr. Sangal's testimony was the only evidence in support of the damages claim. He testified that he paid the subcontractors listed on Sworn Statement #5 who were not paid by Strickfaden and he paid other contractors who performed the work listed on Sworn Statement #5. The Sangals did not submit any paid or unpaid invoices. The Bankruptcy Court found that Dr. Sangal's testimony was not enough to prove a loss because he "simply was not that credible as a witness at trial." (Op., p. 10.)

The Sangals assert the Bankruptcy Court's conclusion that Dr. Sangal's uncontradicted testimony was insufficient to prove loss is clearly erroneous. The Sangals cite only one binding case – *Andrew Jergens Co. v. Conner*, 125 F.2d 686 (6th Cir. 1942). However, in *Andrew Jergens*, the Sixth Circuit found the general rule that an uncontradicted witness should be credited "is subject to many qualifications." 125 F.2d at 689. The statements made by the witness may be improbable, or "[t]he witness, though unimpeached, may have such an interest in the question as to affect his credibility." *Id.*

8

"It is often a difficult question to decide when a witness is, in a legal sense, uncontradicted." *Id.* Thus, "courts and juries are not bound to refrain from exercising their judgment and are not required to blindly adopt the statements of the witness for the simple reason that no other witness had denied them and that his character is not impeached." *Id.* In addition, Federal Rule of Bankruptcy Procedure 8013 provides that "due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."

In this case, the Bankruptcy Court found Dr. Sangal was not a credible witness, and noted that he was unable to produce any paid or unpaid invoice in support of his testimony (despite the Sangals' 366 exhibits). The Bankruptcy Court might have believed that Dr. Sangal had "such an interest" in proving damages that he lacked credibility. Thus, the Sangals failed to show the Bankruptcy Court's finding is clearly erroneous.

## II. Bankruptcy Court's Findings Regarding Labor Charges

The Sangals appeal the Bankruptcy Court's finding that there was no breach of fiduciary duty as a result of Strickfaden's labor payments. The Sangals argue the funds were provided for a specific purpose and not used for that purpose and therefore a breach occurred. The Sangals argue the Bankruptcy Court found a lack of breach of fiduciary duty simply because Strickfaden found a contractual basis for his spending (even though the Sangals argue such spending violated the Michigan Builders Trust Fund Act). The Sangals assert that even if the contract controlled, Strickfaden was not in compliance with the contract regarding labor charges. Additionally, the Sangals argue that Strickfaden cannot use the protections provided to laborers under the Michigan Builders Trust Fund Act to absolve himself of obligations to the Sangals. Testimony from the architect that Strickfaden admitted owing the Sangals money as reimbursement for labor charges is cited by the

9

Sangals in support of their arguments.

The Bankruptcy Court considered the Sangals' assertion that Sworn Statement #6 contained an admission that Strickfaden paid unauthorized labor and project management fees and that such payment was a breach of Strickfaden's fiduciary duty. The Bankruptcy Court noted that the Sangals' argument rested on an assertion that Dr. Sangal's pre-approval was necessary for such charges. However, the Bankruptcy Court found the Sangals did not offer any evidence that Strickfaden even agreed to such a change in the terms of the contract.

Because Strickfaden justified the labor charges, and the MGS laborers were also protected under the Michigan Builders Trust Fund Act, the Bankruptcy Court found Strickfaden provided a sufficient accounting for his MGS labor payments. The Bankruptcy Court specifically found that "Strickfaden provided time sheet details for hours worked by each employee, as well as the type of work done on the project. This accounting was sufficient to justify his payment to them from the funds held in trust." (Op., p. 12.) The Bankruptcy Court had already noted that "a defalcation occurs when a debtor either misappropriates or fails to properly account for those funds held in a trust." (Op., p. 4.) With regard to MGS labor charges, the Bankruptcy Court was satisfied with Strickfaden's accounting. Strickfaden had charged a set hourly rate for each employee. The Bankruptcy Court was able to evaluate the credibility of the witnesses and review the evidence. The Bankruptcy Court simply found no basis for a defalcation claim regarding the labor payments. The Sangals have failed to show the Bankruptcy Court's ruling is erroneous.

Second, the Sangals argue the Bankruptcy Court erred in not placing the burden of proof on Strickfaden regarding the Sangals' allegation that Strickfaden overcharged for

10

MGS labor. The Sangals claim the burden of proof should be placed on Strickfaden pursuant to the Michigan Builders Trust Fund Act. Indeed, the initial burden was placed on Strickfaden by the Bankruptcy Court. It was only after the Bankruptcy Court was satisfied that Strickfaden had provided an accounting of the labor charges that the burden shifted to the Sangals as to their charges that the hourly rates used by Strickfaden were too high.

The Bankruptcy Court found that Strickfaden provided sufficient justification for the labor charges: "Strickfaden explained that he charged a set hourly rate for each employee that incorporated their hourly rate as well as benefits that MGS paid on the employees behalf, and also incorporated taxes and worker's compensation insurance." The Sangals attack the hourly rates charged for MGS laborers, asserting that the breakdowns of the hourly rates provided to Dr. Sangal (Defendant's Exhibit BE) include certain FICA taxes that were not paid by Strickfaden. Strickfaden admitted during the trial that he made a mistake in including certain FICA tax amounts on the breakdown sheets. Strickfaden asserts the charts were provided to Dr. Sangal when Dr. Sangal asked for justification for the hourly rates charged. The breakdown sheets show that Strickfaden would have made a profit on certain hourly rates and would have lost money on certain hourly rates. Strickfaden testified that even after removing the payroll taxes identified by the Sangals' counsel, he still lost money on most of the hourly rates charged. He also testified that he does pay FICA tax for some of his employees.

The Sangals also argue that Strickfaden has not shown evidence of the payments for worker's compensation insurance. The Bankruptcy Court noted that Strickfaden provided QuickBooks ledgers showing he made the worker's compensation insurance

11

payments. The Bankruptcy Court found the Sangals' argument that Strickfaden did not make payments he said he made (particularly tax and worker's compensation insurance payments) a claim of actual fraud and thus the Sangals hold the burden of proof on such a claim. The Bankruptcy Court found the Sangals had not shown actual fraud. The Bankruptcy Court's ruling is not erroneous.

CONCLUSION

For the reasons set forth above, the Court AFFIRMS the Bankruptcy Court's Opinion finding for Defendant Strickfaden.

Dated: September 9, 2010

S/George Caram Steeh  
GEORGE CARAM STEEH  
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on September 9, 2010, by electronic and/or ordinary mail.

S/Josephine Chaffee
Deputy Clerk

---